1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

BONNIE C. SATO,

          Plaintiff(s),

    v.

WACHOVIA MORTGAGE, FSB, et. al.,

          Defendant(s).

_____/

NO. 5:11-cv-00810 EJD (PSG)

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE; GRANTING DEFENDANT'S MOTION TO REMAND; DENYING AS MOOT PLAINTIFF'S EX PARTE MOTION TO AMEND COMPLAINT**

[Docket Item Nos. 11, 12, 17, 26]

      Within this action alleging the wrongful institution of foreclosure proceedings, Defendant Wachovia Mortgage, FSB ("Wachovia") moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike portions of the complaint pursuant to Federal Rule of Civil Procedure 12(f).  Wachovia also moves to remand the unlawful detainer portion of this case to the Monterey Superior Court on various grounds.  After reviewing the complaint as well as the moving, responding and reply papers for each motion, the Court found these matters suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b).  As such, the hearing previously scheduled was vacated and the motions submitted.  For the reasons set forth below, the motion to dismiss will be granted with leave to amend in part, rendering the motion to strike moot.  The

1

motion to remand will be granted.[1]

## I.   FACTUAL AND PROCEDURAL BACKGROUND

In 1986, Sato purchased the property at issue located at 25500 Via Marquita in Carmel (the "Property") by executing a Deed of Trust in the amount of $317,000.00.  Complaint at ¶ 10.  Sato then refinanced the Property in 2008 through Wachovia.  Id. at ¶ 11.  On the corresponding Deed of Trust for this new loan, Wachovia was listed as the "lender" and Golden West Savings Association Service Company was listed as the "trustee."  Id.

Sato remained current on her mortgage payments.  Id. at ¶¶ 12-15.  However, after a series of personal events which diminished her financial status, Sato contacted Wachovia in early 2008 and requested information about a loan modification since her current loan was an adjustable rate, negative amortization loan.  Id. at ¶¶ 12-17.  Wachovia representatives told Sato "numerous times" that she must stop making mortgage payments in order to for Wachovia to review her loan for a potential modification.  Id. at ¶ 18.  Relying on these statements, Sato did in fact stop paying her mortgage and believed Wachovia was in the process of reviewing of her loan.  Id. at ¶¶ 21, 23.

Sato provided all information requested of her during the period her loan was under review.  Id. at ¶ 25.  According to Sato, however, Wachovia "routinely botched up documents, lost documents and asked for the same documentation over and over again" and despite her requests, Sato could not get a straight answer from Wachovia regarding the status of her loan.  Id. at ¶¶ 24, 26.  Wachovia never returned a "valid answer" on Sato's potential loan modification, and never discussed with her options to avoid foreclosure."  Id. at ¶¶ 27-29.  At some point, Wachovia stopped reviewing Sato's account and initiated foreclosure proceedings.  Id. at ¶ 31.  Thus, on June 28, 2010, a Notice of Default was recorded by Defendant NDex West ("NDex").  Id. at ¶ 35.  Thereafter, NDex was substituted as Trustee (although they had already filed a Notice of Default) on August 13,

---

[1] This disposition is not designated for publication in the official reports.

Case No. 5:11-cv-00810 EJD (PSG)
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE; GRANTING DEFENDANT'S MOTION TO REMAND; DENYING AS MOOT PLAINTIFF'S ADMINISTRATIVE MOTION TO AMEND COMPLAINT (EJDLC1)

2

United States District Court
For the Northern District of California

1    2010, and a Notice of Trustee's Sale was filed by NDex on September 30, 2010.  Id. at ¶¶ 36, 37.

2        Sato initiated this case in Monterey County Superior Court on January 13, 2011, alleging

3    eight claims for relief: (1) Quiet Title; (2) violation of California Civil Code § 2923.5; (3) violation

4    of California Business and Professions Code § 17200 et. seq.; (4) intentional misrepresentation; (5)

5    negligent misrepresentation; (6) promissory estoppel; (7) injunctive relief; and (8) recission.  On

6    February 22, 2011, Wachovia removed Sato's action to this court pursuant to 28 U.S.C. § 1332 et.

7    seq.  A subsequent unlawful detainer action brought by Wachovia in Monterey County Superior

8    Court was thereafter removed by Sato on March 15, 2011, and consolidated into this case.

10                        **II.    THE MOTION TO DISMISS**

11       Wachovia moves to dismiss all of Sato's claims as pre-empted by the Home Owners' Loan

12   Act ("HOLA").  As discussed further below, the court agrees that the first, second, seventh and

13   eighth claims are preempted and cannot be saved through amendment.  Thus, they will be dismissed

14   without leave to amend.  The remaining claims will be dismissed with leave to amend.

15       **A.        Request for Judicial Notice ("RJN")**

16       In support of this motion to dismiss, Wachovia requested the court take judicial notice of

17   various documents. See Wachovia's RJN. Exs. A-I.  These documents include: (A) the Deed of

18   Trust, (B) the Charter of Wachovia Mortgage, FSB, (C) a certification from the Comptroller of the

19   Currency, (D) the Notice of Default, (E) the Substitution of Trustee, (F) the Notice of Trustee's Sale,

20   (G) a letter from Wachovia to Sato informing her of a rate adjustment, (H) a letter from Wachovia to

21   Sato informing her she did not qualify for a loan modification, and (I) the Trustee's Deed upon Sale.

22       For a motion to dismiss, the court does not generally look beyond the complaint as doing so

23   may enter the purview of summary judgment.  See Fed. R. Civ. P. 12(d).  There are, however, two

24   exceptions to this rule.  First, the court may properly take judicial notice of material which is

25   attached as part of the complaint or relied upon by the complaint.  See Lee v. City of Los Angeles,

Case No. 5:11-cv-00810 EJD (PSG)
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING AS MOOT DEFENDANT'S MOTION TO
STRIKE; GRANTING DEFENDANT'S MOTION TO REMAND; DENYING AS MOOT PLAINTIFF'S
ADMINISTRATIVE MOTION TO AMEND COMPLAINT (EJDLC1)

**United States District Court**
For the Northern District of California

250 F.3d 668, 688-69 (9th Cir. 2001).  Second, the court may properly take judicial notice of matters

in the public record pursuant to Federal Rule of Evidence 201(b).  Id.  Rule 201(b) requires a

"judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally

known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready

determination by resort to sources whose accuracy cannot reasonably be questioned."  A court "shall

take judicial notice if requested by a party and supplied with the necessary information." See Fed. R.

Evid. 201(d).

Here, Sato does not challenge the authenticity of the documents contained in Wachovia's

RJN.  Exhibits A, D, E, F and I are judicially noticeable as matters of public record.  Exhibits G and

H are judicially noticeable because they are relied upon by the complaint.  Complaint at ¶¶ 31, 32.

Additionally, exhibits B and C are judicially noticeable as "capable of accurate and ready

determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid.

201(b)(2); Hite v. Wachovia Mortg., No. 2:09-cv-02884-GEB-GGH, 2010 U.S. Dist. LEXIS 57732,

at *6-9 (E.D. Cal. June 10, 2010); Gens v. Wachovia Mortg. Corp., No. CV10-01073 JF (HRL),

2010 U.S. Dist. LEXIS 54932, at *6-7 (N.D. Cal. May 12, 2010).  Therefore, Wachovia's RJN is

granted in its entirety.

**B.     Legal Standards**

**1.     Dismissal under Rule 12(b)(6)**

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient

specificity to "give the defendant fair notice of what the...claim is and the grounds upon which it

rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).  A

complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim

upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "Dismissal under Rule 12(b)(6) is

appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a

cognizable legal theory."  Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir.

4

1    2008).  Moreover, the factual allegations "must be enough to raise a right to relief above the

2    speculative level" such that the claim "is plausible on its face."  Twombly, 550 U.S. at 556-57.

3         When deciding whether to grant a motion to dismiss, the court generally "may not consider

4    any material beyond the pleadings."  Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d

5    1542, 1555 n. 19 (9th Cir. 1990).  The court must accept as true all "well-pleaded factual

6    allegations."  Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937, 1950 (2009).  The court must also

7    construe the alleged facts in the light most favorable to the plaintiff.  Love v. United States, 915 F.2d

8    1242, 1245 (9th Cir. 1988).  "[M]aterial which is properly submitted as part of the complaint may be

9    considered."  Twombly, 550 U.S. at 555.  But "courts are not bound to accept as true a legal

10   conclusion couched as a factual allegation."  Id.

11        Additionally, fraud-based claims are subject to heightened pleading requirements under

12   Federal Rule of Civil Procedure 9(b).  In that regard, a plaintiff alleging fraud "must state with

13   particularity the circumstances constituting fraud."  Fed. R. Civ. Proc. 9(b).  The allegations must be

14   "specific enough to give defendants notice of the particular misconduct which is alleged to

15   constitute the fraud charged so that they can defend against the charge and not just deny that they

16   have done anything wrong."  Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985).  To that end,

17   the allegations must contain "an account of the time, place, and specific content of the false

18   representations as well as the identities of the parties to the misrepresentations."  Swartz v. KPMG

19   LLP, 476 F.3d 756, 764 (9th Cir. 2007).

20        If dismissal is granted, leave to amend should be freely allowed "unless the court determines

21   that the allegation of other facts consistent with the challenged pleading could not possibly cure the

22   deficiency."  Schreiber Distrib. Co. v. Serv–Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir.

23   1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000); Fed. R. Civ. P. 15(a).  Where

24   amendment to the complaint would be futile, the court may order dismissal with prejudice.  Dumas

25   v. Kipp, 90 F.3d 386, 393 (9th Cir. 1996).

26

27   Case No. 5:11-cv-00810 EJD (PSG)
     ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING AS MOOT DEFENDANT'S MOTION TO
28   STRIKE; GRANTING DEFENDANT'S MOTION TO REMAND; DENYING AS MOOT PLAINTIFF'S
     ADMINISTRATIVE MOTION TO AMEND COMPLAINT (EJDLC1)

United States District Court
For the Northern District of California

1    //

2        **2.        Preemption under HOLA**

3        Federal preemption of state laws stems from the Supremacy Clause of the Constitution.

4    United States v. Arizona, No. 10-16645, 2011 U.S. App. LEXIS 7413, at *4.  "[T]he laws of the

5    United States...shall be the supreme law of the land...any Thing in the Constitution or laws of any

6    state to the contrary notwithstanding."  U.S. Const. art. VI, cl. 2.

7        Generally, "[p]reemption analysis 'start[s] with the assumption that the historic police

8    powers of the States were not to be superseded by the Federal Act unless that was the clear and

9    manifest purpose of Congress.'"  City of Columbus v. Ours Garage & Wrecking Service, Inc., 536

10   U.S. 424, 438 (2002) (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)).  Congressional

11   intent is therefore the "ultimate touchstone" of preemption inquiry.  Medtronic, 518 U.S. at 485.

12   Such intent may be "explicitly stated in the statute's language or implicitly contained in its structure

13   and purpose."  Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 152-53 (1982).

14   State law may also be preempted by federal regulations.  Id. at 153.  "Where Congress has directed

15   an administrator to exercise his discretion, his judgments are subject to  judicial review only to

16   determine whether he has exceeded his statutory authority or acted arbitrarily."  Id.  If these

17   conditions are met, "the statutorily authorized regulations of an agency will pre-empt any state or

18   local law that conflicts with such regulations or frustrates the purposes thereof."  New York v. Fed.

19   Commc'ns Comm'n, 486 U.S. 57, 64 (1988).

20       There are times when the traditional presumption against preemption does not apply.  Indeed,

21   the presumption is "not triggered when the State regulates in an area where there has been a history

22   of significant federal presence."  United States v. Locke, 529 U.S. 89, 108 (2000).  As relevant here,

23   "Congress has legislated in the field of banking from the days of McCulloch v. Maryland, 17 U.S.

24   316, 325-26, 426-27, 4 L. Ed. 579 (1819), creating an extensive federal statutory and regulatory

25   scheme."  Bank of Am. v. City & County of San Francisco, 309 F.3d 551, 558 (9th Cir. 2002).

26
                                                    6

27   Case No. 5:11-cv-00810 EJD (PSG)
     ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING AS MOOT DEFENDANT'S MOTION TO
28   STRIKE; GRANTING DEFENDANT'S MOTION TO REMAND; DENYING AS MOOT PLAINTIFF'S
     ADMINISTRATIVE MOTION TO AMEND COMPLAINT (EJDLC1)

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  HOLA was enacted "to charter savings associations under federal law, at a time when record

2  numbers of home loans were in default and a staggering number of state-chartered savings

3  associations were insolvent."  Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1004 (9th Cir. 2008).

4  One of HOLA's central purposes was to restore public confidence in the banking system by

5  consolidating the regulation of savings and loan associations with the federal government.  Id.  To

6  achieve this purpose, Congress authorized the Office of Thrift Supervision ("OTS") to promulgate

7  regulations governing federal savings associations.  12 U.S.C. § 1464; Silvas, 514 F.3d at 1005.

8  OTS occupies the entire field in that regard.  12 C.F.R. § 560.2(a) (2011).

9      HOLA's implementing regulations set forth a list, "without limitation," of the categories of

10  state laws that are expressly preempted:

11      The terms of credit, including amortization of loans and the deferral
        and capitalization of interest and adjustments to the interest rate,
12      balance, payments due, or term to maturity of the loan, including the
        circumstances under which a loan may be called due and payable upon
13      the passage of time or a specified event external to the loan;
                                ....
14      Disclosure and advertising, including laws requiring specific
        statements, information, or other content to be included in credit
15      application forms, credit solicitations, billing statements, credit
        contracts, or other credit-related documents and laws requiring
16      creditors to supply copies of credit reports to borrowers or applicants;
                                ....
17      Processing, origination, servicing, sale or purchase of, or investment
        or participation in, mortgages....
18  12 C.F.R. § 560.2(b)(4), (b)(9)-(10) (2011).

19      Although HOLA and its related regulations have been described as "so pervasive as to leave

20  no room for state regulatory control," state laws may nonetheless survive a preemption claim in

21  limited circumstances.  Conference of Fed. Sav. & Loan Ass'ns v. Stein, 604 F.2d 1256, 1260 (9th

22  Cir. 1979), aff'd, 445 U.S. 921.  Those state laws which "only *incidentally affect* the lending

23  operations of Federal savings associations or are otherwise consistent with the purposes of" the

24  regulations may not be preempted."  12 C.F.R. § 560.2(c) (emphasis added).  In order to determine

25

26                                        7

27

1    whether a particular state law has such an effect, the Ninth Circuit has provided the following

2    process:

> 3    When analyzing the status of state laws under § 560.2, the first step
> will be to determine whether the type of law in question is listed in
> 4    paragraph (b).  If so, the analysis will end there; the law is preempted.
> If the law is not covered by paragraph (b), the next question is whether
> 5    the law affects lending.  If it does, then, in accordance with paragraph
> (a), the presumption arises that the law is preempted. This presumption
> 6    can be reversed only if the law can clearly be shown to fit within the
> confines of paragraph (c).  For these purposes, paragraph (c) is
> 7    intended to be interpreted narrowly.  Any doubt should be resolved in
> favor of preemption.

8

9    Silvas, 514 F.3d at 1005 (quoting OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sep. 30, 1996)).

10       **B.      Discussion**

11            As a preliminary matter, it is important to note that Sato obtained the subject home loan from

12   Wachovia Mortgage, FSB, in 2008.  Complaint at ¶ 11; RJN, Ex. A.  At that time, Wachovia was an

13   independent "Federal savings bank chartered under section 5 of the Home Owners' Loan Act" and

14   "subject to all lawful and applicable rules, regulations, and orders of the Office of Thrift

15   Supervision."  RJN, Ex. B.  Although Wachovia was subsequently acquired by a national banking

16   association, namely Wells Fargo Bank, N.A., district courts have held that HOLA preemption

17   applies to all conduct relating to the loan.  DeLeon v. Wells Fargo Bank, N.A., 729 F. Supp. 2d

18   1119, 1126 (N.D. Cal. 2010); Haggarty v. Wells Fargo Bank, N.A., No. C 10-02416 CRB, 2011 U.S.

19   Dist. LEXIS 9962, at *10-11 (N.D. Cal. Feb. 2, 2011); Guerrero v. Wells Fargo Bank, N.A., No. CV

20   10-5095-VBF(AJWx), 2010 U.S. Dist. LEXIS 96261, at *8-9 (C.D. Cal. Sep. 14, 2010); Zlotnik v.

21   U.S. Bancorp, No. C 09-3855 PJH, 2009 U.S. Dist. LEXIS 119857, at *17-19 (N.D. Cal. Dec. 22,

22   2009).  This court agrees with the conclusions of its predecessors and will therefore examine this

23   matter under HOLA.  Sato's argument in opposition, which mainly discusses preemption under the

24

25

26                                                 8

1   National Bank Act ("NBA"), 12 U.S.C. § 38 et. seq., is misplaced.[2]

2   **1.     Claim 2: Violation of California Civil Code § 2923.5**

3   Sato alleges Wachovia violated the notice provisions contained in California Civil Code §

4   2923.5 by failing to contact her prior to foreclosure proceedings.  The statute requires a mortgage

5   lender to "contact the borrower in person or by telephone in order to assess the borrower's financial

6   situation and explore options for the borrower to avoid foreclosure."  Cal. Civ. Code § 2923.5(a)(2).

7   A notice of default cannot be filed until 30 days after this contact is made.  Cal. Civ. Code §

8   2923.5(a)(1).

9   Sato's claim under § 2923.5 must be dismissed for three reasons: (1) § 2923.5 does not apply

10  to Sato's mortgage loan, (2) § 2923.5 is preempted by HOLA, and (3) Sato is no longer eligible for

11  relief under § 2923.5 even if the statute was viable here.

12  As to the first reason for dismissal, the court need not look further than the plain language of

13  the statute.  "This section shall apply only to mortgages or deeds of trust recorded from *January 1,*

14  *2003, to December 31, 2007*, inclusive, that are secured by owner-occupied residential real property

15  containing no more than four dwelling units."  Cal. Civ. Code § 2923.5(I) (emphasis added).  Sato

16  obtained her loan in 2008.  Complaint at ¶ 11.  The deed of trust was recorded on January 29, 2008.

17  RJN, Ex. A.  Thus, § 2923.5 does not apply to Sato's loan.

18  Regarding preemption, "the overwhelming weight of authority has held that a claim under

19  section 2923.5 is preempted by HOLA."  Taguinod v. World Savings Bank, No. CV 10-7864-SVW,

20  2010 U.S. Dist. LEXIS 127677, at *20 (C.D. Cal. Dec. 2, 2010); see also, e.g., Nguyen v. Wells

21  Fargo Bank, N.A., 749 F. Supp. 2d 1022, 1033 (N.D. Cal. 2010); Beall v. Quality Loan Serv., No.

22  10-CV-1900-IEG (WVG), 2011 U.S. Dist. LEXIS 29184, at *21-23 (C.D. Cal. Mar. 21, 2011).  This

23

24  [2]In any event, it is likely preemption under NBA would lead to the same result.  Zlotnik v.

25  U.S. Bancorp, 2009 U.S. Dist. LEXIS 119857, at *19 (finding the preemption analysis under NBA as identical to that under HOLA).

26

27  Case No. 5:11-cv-00810 EJD (PSG)
    ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING AS MOOT DEFENDANT'S MOTION TO
28  STRIKE; GRANTING DEFENDANT'S MOTION TO REMAND; DENYING AS MOOT PLAINTIFF'S
    ADMINISTRATIVE MOTION TO AMEND COMPLAINT (EJDLC1)

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

1    is because the notice requirement imposed by § 2923.5 "implicates HOLA's express preemption of

2    state laws regulating the 'processing' and 'servicing'" of mortgages.  <u>DeLeon</u>, 729 F. Supp. 2d at

3    1127.  Although one California appellate court has found against HOLA preemption, that court's

4    determination is neither binding on this court, nor persuasive in its reasoning.  <u>See</u> <u>Mabry v. Sup.</u>

5    <u>Ct.</u>, 185 Cal. App. 4th 208, 226-32 (2010).  In the simplest of terms, the <u>Mabry</u> court held that since

6    the term "foreclosure" does not explicitly appear in 12 C.F.R. § 560.2(b), state statutes that can be

7    read to regulate only the foreclosure process, like § 2923.5, are not preempted by HOLA.  <u>Id</u>. at 231.

8    But looking to the categories of state laws expressly preempted by HOLA is only the first step of the

9    two step inquiry prescribed by the Ninth Circuit.  <u>See</u> <u>Silvas</u>, 514 F.3d at 1005; <u>see also</u> <u>Giordano v.</u>

10   <u>Wachovia Mortg., FSB</u>, 5:10-cv-04661-JF, 2010 U.S. Dist. LEXIS 136284, at *11-14 (N.D. Cal.

11   Dec. 14, 2010).  Having undertaken the second step, this court finds - as others have found even

12   after <u>Mabry</u> - that the additional notice and disclosure requirements imposed by § 2923.5 affect

13   lending in a manner that cannot be described as incidental, even if foreclosure activities are not

14   explicitly listed in 12 C.F.R. § 560.2(b).  For this reason, § 2923.5 is preempted by HOLA.

15          In addition to the grounds stated above, Sato's claim under § 2923.5 would nonetheless be

16   subject to dismissal even if the statute was applicable.   The only available remedy available for a

17   violation of § 2923.5 is the postponement of an impending foreclosure to permit the lender to

18   comply with the statute.  <u>Mabry</u>, 185 Cal. App. 4th at 223-24.  Since the subject property has since

19   been sold, Sato can obtain no further relief.  RJN, Ex. I.

20          Claim 2 will be dismissed without leave to amend.

21          **2.      Claim 3: Violation of California Business and Professions Code**

22          Sato alleges violations of California's Unfair Competition Law ("UCL").  Cal. Bus. & Prof.

23   Code § 17200 et. seq.  Under the UCL, there are three varieties of unfair competition: "acts or

24   practices which are *unlawful*, or *unfair*, or *fraudulent*."  <u>Khoury v. Maly's of California, Inc.</u>, 14 Cal.

25   App. 4th 612, 618-19 (1993).  "Unlawful" practices are "forbidden by law, be it civil or criminal,

26
                                              10

27   Case No. 5:11-cv-00810 EJD (PSG)
     ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING AS MOOT DEFENDANT'S MOTION TO
28   STRIKE; GRANTING DEFENDANT'S MOTION TO REMAND; DENYING AS MOOT PLAINTIFF'S
     ADMINISTRATIVE MOTION TO AMEND COMPLAINT (EJDLC1)

United States District Court

For the Northern District of California

federal, state, or municipal, statutory, regulatory, or court-made." <u>Saunders v. Sup. Ct.</u>, 27 Cal. App. 4th 832, 838 (1999). "Unfair" practices constitute "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." <u>Cal-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.</u>, 20 Cal. 4th 163, 187 (1999). The "fraudulent" prong under the UCL requires a showing of actual or potential deception to some members of the public, or harm to the public interest. <u>See id.</u> at 180; <u>see also</u> <u>McKell v. Wash. Mut., Inc.</u>, 142 Cal. App. 4th 1457 (2006); <u>Freeman v. Time, Inc.</u>, 68 F.3d 285, 289 (9th Cir. 1995). The UCL 'borrows' violations of other laws and treats them as unfair business practices, and also "makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law." <u>Cal-Tech</u>, 20 Cal. 4th at 180.

Sato's UCL claim can be separated into three basic allegations: (1) "fraudulent representations" concerning the continuation of mortgage payments and the availability of a loan modification, (2) a violation of California Civil Code § 2923.6, and (3) a violation of California Civil Code § 2923.5. Sato contends she lost money and property as a result of Wachovia's conduct.

Sato's third allegation under § 2923.5, which is identical to her stand-alone claim under that statute, is preempted for the same reasons discussed in the preceding section. Similarly, the second allegation under § 2923.6 is preempted as plead. Although the UCL is a law of general applicability, it may nonetheless be preempted if, as applied, it is a type of state law contemplated by 12 C.F.R. § 560.2(b). <u>Silvas</u>, 514 F.3d at 1006. "If it is, the preemption analysis ends." <u>Id</u>. Here, Sato alleges Wachovia violated § 2923.6 by failing to modify her loan. Complaint at ¶ 64. This clearly falls under the preemption provisions for "processing, origination, sale or purchase of … mortgages" and "terms of credit." <u>See</u> <u>Stefan v. Wachovia</u>, No. C 09-2252 SBA, 2009 U.S. Dist. LEXIS 113480, at *8-10 (N.D. Cal. Dec. 7, 2009); <u>see also</u> <u>Guerrero</u>, 2010 U.S. Dist. LEXIS 96261, at *8-10. Since both allegations of statutory violations are subject to HOLA preemption, they

United States District Court

For the Northern District of California

1    cannot support this UCL claim.

2         The first allegation presents a different issue.  Sato contends Wachovia told her "numerous

3    times" that she must default in order for her loan to be reviewed for potential modification, and that

4    Wachovia deceived her by offering modification while simultaneously attempting to foreclose on the

5    property.  See Complaint at ¶¶ 18, 58, 65.  District courts are split as to whether this type of

6    misrepresentation claim is preempted by HOLA.  Compare Guerrero, 2010 U.S. Dist. LEXIS 96261,

7    at *8-10 (finding HOLA preemption for fraud claims arising from the loan modification process)

8    and Stefan, 2009 U.S. Dist. LEXIS 113480, at *8-10, with DeLeon v. Wells Fargo Bank, N.A., No.

9    10-CV-01390-LHK, 2011 U.S. Dist. LEXIS 8296, at *14-21 (N.D. Cal. Jan. 28. 2011) (finding

10   against preemption of false representation claims that did not impose obligations on lending

11   activity).  From these cases, it appears the distinction is this: alleged misrepresentations concerning

12   "inadequate disclosures of fees, interest rates, or other loan terms" directly affect lending and are

13   preempted, while allegations which "rely on the general duty not to misrepresent material facts" are

14   not preempted.  DeLeon, 2011 U.S. Dist LEXIS at *16-17.

15        Here, Sato's allegations could be read two ways, one which would render them preempted

16   and one which would not.  If the court infers from the allegations that loan modifications must

17   always be made available, and that Wachovia was required to review, or even modify, Sato's loan

18   and to hold all foreclosure efforts during that time, then the allegations are preempted because they

19   surely seek to impose an obligation which affects lending.  See Ortiz v. Wells Fargo Bank, N.A., No.

20   C 10-4812 RS, 2011 U.S. Dist. LEXIS 58243, at *14-15 (N.D. Cal. May 27, 2011) (holding that

21   ostensible UCL claim alleging misrepresentation of availability of loan modification is preempted

22   by HOLA).  However, if the court infers that the allegations only invoke a general duty to not

23   engage in fraud during business dealings, then the claim only incidentally affects lending and is not

24   preempted. DeLeon, 2011 U.S. Dist LEXIS at *18-19.  At this stage in the case, the court must

25   construe the complaint in the manner most favorable to Sato.  Love, 915 F.2d at 1245.  Thus, the

26                                            12

1   court finds that Sato's UCL claim is not preempted to the extent it relies on general allegations of

2   misrepresentation.

3       But that does not end the discussion.  "A plaintiff alleging unfair business practices under

4   [the UCL] must state with reasonable particularity the facts supporting the statutory elements of the

5   violation."  Khoury v. Maly's of California, Inc., 14 Cal. App. 4th 612, 619, 17 Cal. Rptr. 2d 708

6   (1993).  Removing the statutory violations from this claim renders it devoid of sufficient facts to

7   support a UCL violation.  What is left are only general, vague and conclusory allegations which lack

8   the "who, what, when, where, and how" required by Rule 9(b).  Kearns v. Ford Motor Co., 567 F.3d

9   1120, 1125 (9th Cir. 2009).  It must be amended to survive.

10      Accordingly, Claim 3 will be dismissed with leave to amend since Sato may be able to allege

11  additional facts to support misrepresentation.  Any amended UCL claim must remove reference to

12  violations of the preempted statutes.

13                  **3.      Claim 1, 7 & 8: Quiet Title, Injunctive Relief and Rescission**

14      In her first claim, Sato seeks to quiet title in her favor notwithstanding the foreclosure

15  process.  Her seventh claim for injunctive relief seeks to postpone the trustee's sale. Sato also seeks

16  to rescind the Notice of Trustee's Sale and re-start the foreclosure process in the eighth claim.  To

17  the extent the claim for quiet title is premised on defective notice under § 2923.5, it fails as that

18  statute is inapplicable and preempted by HOLA.  Moreover, Sato's allegations in each of these

19  claims that NDex West had no ability to commence foreclosure proceedings due to a violation of

20  California Civil Code § 2934a is directly contradicted by judicially-noticeable documents referenced

21  by Sato in the complaint, which plainly demonstrate NDex was substituted as trustee before the

22  Notice of Trustee's Sale was recorded.  RJN, Exs. E, F. Similarly, the claims for injunctive relief

23  and rescission can no longer be maintained based on another judicially-noticeable document - the

24  Trustee's Deed upon sale.  RJN, Ex. I.

25      Under these circumstances, allowing for amendment of the claims would be futile.  Claims 1,

26                                                        13

27  Case No. 5:11-cv-00810 EJD (PSG)
    ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING AS MOOT DEFENDANT'S MOTION TO
    STRIKE; GRANTING DEFENDANT'S MOTION TO REMAND; DENYING AS MOOT PLAINTIFF'S
28  ADMINISTRATIVE MOTION TO AMEND COMPLAINT (EJDLC1)

1    7 and 8 are therefore dismissed without leave to amend.

2            **4.    Claims 4 & 5: Intentional and Negligent Misrepresentation**

3            Sato's fourth and fifth claims allege fraud based on intentional and negligent

4    misrepresentation.  These claims both rely on the allegations that: (1)  Defendants failed to properly

5    assign and transfer their rights under the Deed of Trust prior to foreclosure, in violation of certain

6    California statutes, and (2) Wachovia misrepresented to Sato that she had to default on her mortgage

7    payments in order to qualify for a loan modification.

8            As discussed above, the portion of these claims alleging Defendants' inability to foreclose is

9    contradicted by judicially-noticeable documents and therefore cannot be maintained.  The remaining

10    portion of these claims, however, may survive summary dismissal on preemption grounds because

11    they do not attempt to impose substantive requirements on the process of lending, much like Sato's

12    misrepresentation-based UCL claim.  This conclusion notwithstanding, however, the Court has

13    determined these claims have not been sufficiently plead.

14            In California, the elements of fraud are: (1) misrepresentation; (2) knowledge of falsity; (3)

15    intent to defraud or to induce reliance (4) justifiable reliance; and (5) resulting damage.  Engalla v.

16    Permanente Med. Group, Inc., 15 Cal. 4th 951, 974 (1997).  Although the court looks to state law to

17    determine if the elements of fraud have been properly pleaded, a plaintiff must still meet the federal

18    standard to plead fraud with particularity.  Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir.

19    2009).  Under these standards, the fraud claims are incomplete.  While Sato identifies the alleged

20    misrepresentations made to her, she provides little more.  She has not adequately alleged that

21    Defendants knew the statements were false, that they intended to deceive her, that her reliance on

22    their statements was justifiable, or that she suffered damages as a result.  Moreover, neither claim is

23    plead with particularity.  Thus, these claims must be dismissed for much the same reason as her UCL

24    claim.

25            Claim 4 and 5 will be dismissed with leave to amend.  If Sato chooses to amend these claims,

14

26

27    Case No. 5:11-cv-00810 EJD (PSG)
      ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING AS MOOT DEFENDANT'S MOTION TO
28    STRIKE; GRANTING DEFENDANT'S MOTION TO REMAND; DENYING AS MOOT PLAINTIFF'S
      ADMINISTRATIVE MOTION TO AMEND COMPLAINT (EJDLC1)

**United States District Court**
For the Northern District of California

1   she much remove the allegations alleging statutory violations, and must provide sufficient and

2   particular facts supporting each element of fraud.

### 5.    Claim 6: Promissory Estoppel

4          For this claim, Sato repeats allegations that Wachovia represented to her numerous times that

5   she must default on her mortgage payments in order to qualify for a loan modification.  She also

6   alleges that Wachovia represented there was "no reason that she should not be accepted for a

7   modification."  Sato alleges damages due to reliance on these representations.  Much like her UCL

8   claim, this claim for promissory estoppel can be read in two ways: one which would result in HOLA

9   preemption in requiring a loan modification or postponement of foreclosure, and one which would

10  not result in preemption by simply alleging promises that were not kept.  As with the UCL claim, the

11  court cannot find clear preemption at this point.  <u>Love</u>, 915 F.2d at 1245.

12         This raises the question of whether the promissory estoppel claim has been sufficiently plead.

13  In its current form, it is missing basic facts which render it incomplete.  A successful claim for

14  promissory estoppel requires: "(1) a promise that is clear and unambiguous in its terms; (2) reliance

15  by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and

16  (4) the party asserting the estoppel must be injured by his or her reliance."  <u>Boon Rawd Trading</u>

17  <u>Intern. Co., Ltd. v. Paleewong Trading Co., Inc.</u>, 688 F. Supp.2d 940, 953 (N.D. Cal. 2010); <u>see also</u>

18  <u>Ecology, Inc. v. State of California</u>, 129 Cal. App. 4th 887, 901-902, 904 (2005).  Here, Sato's claim

19  is missing allegations critical to her theory.  For this claim to survive, Sato must allege Wachovia

20  represented it would hold foreclosure proceedings while her loan was under review.  Without that

21  promise, the other two representations alleged by Sato are meaningless in this context since it is not

22  reasonable to believe, relying only on the representations alleged, that foreclosure was not a

23  possibility even if the loan was under review.  More facts are needed to establish the specific

24  promises made.

25         Since Sato may be able to provide additional facts which would support a claim of

26                                                            15

27

28

United States District Court
For the Northern District of California

1   promissory estoppel, claim 6 is dismissed with leave to amend.

2   ## II.   THE MOTION TO STRIKE

3   The Court may strike "from any pleading any insufficient defense or any redundant,

4   immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  A motion to strike will

5   generally not be granted unless it is clear the matter to be stricken could not have any possible

6   bearing on the subject matter of the litigation.  See LeDuc v. Ky. Cent. Life Ins. Co., 814 F. Supp.

7   820, 830 (N.D. Cal. 1992).  Here, Wachovia moves to strike two specific portions of the complaint.

8   However, because the court has granted Wachovia's motion to dismiss all of the claims, the motion

9   to strike will be denied as moot.

10  ## III.   THE MOTION TO REMAND

11  Through this motion, Wachovia seeks to remand an unlawful detainer action originally filed

12  against Sato in Monterey County Superior Court.  Wachovia also seeks to recover its fees for having

13  to bring this motion.  Sato removed this separate action from state court after the commencement of

14  this case, alleging that the court has both federal-question and diversity jurisdiction. Notice of

15  Removal, Docket Item No. 14 at 5-6.  She also argues this court should exercise supplemental

16  jurisdiction pursuant to 28 U.S.C. § 1367 as Wachovia's unlawful detainer action and Sato's

17  wrongful foreclosure action arise between the same parties and involve the same facts.  Since the

18  unlawful detainer complaint presents only state claims on its face and diversity jurisdiction is

19  lacking, the court grants Wachovia's motion.

20  ### A.   Legal Standard

21  A state court action may be removed to federal court so long as the action could have

22  originally asserted federal-question jurisdiction.  28 U.S.C. 1441(b).  The defendant must show the

23  basis for federal jurisdiction.  Nishimoto v. Federman-Bachrach & Assoc., 903 F.2d 709, 712 (9th

24  Cir. 1990).  Removal jurisdiction statutes are strictly construed against removal.  Shamrock Oil &

25  Gas Corp. v. Sheets, 313 U.S. 100, 108, 61 S. Ct. 868, 85 L. Ed. 1214 (1941).  A "well-pleaded

16

26
27

United States District Court

For the Northern District of California

complaint" presents a federal-question on the face of the pleading. <u>Metropolitan Life Insurance Co. v. Taylor</u>, 481 U.S. 58, 63 (1987).  An anticipated or even actual federal defense is not sufficient to confer jurisdiction.  <u>Franchise Tax Bd. of California v. Construction Laborers Vacation Trust</u>, 463 U.S. 1, 10 (1983).  A plaintiff, however, may not defeat removal by purposely omitting necessary federal questions from the complaint. <u>Id</u>. at 22.

### 1.    Federal Question & Supplemental Jurisdiction

Wachovia alleges a single claim against Sato for unlawful detainer. Docket Item No. 14 at Ex. 1.  Unlawful detainer claims themselves do not arise under federal law, and therefore, the court lacks federal-question jurisdiction. <u>See, e.g.</u>, <u>Fed. Nat'l Mortg. Assoc. v. Lopez</u>, No. C 11-00451 WHA, 2011 U.S. Dist. LEXIS 44818, 2011 WL 1465678 at *1 (N.D. Cal. Apr. 15, 2011); <u>GMAC Mortg. LLC v. Rosario</u>, No. C 11-1894 PJH, 2011 U.S. Dist. LEXIS 53643, 2011 WL 1754053, at *2 (N.D. Cal. May 9, 2011); <u>Wescom Credit Union v. Dudley</u>, No. CV 10-8203 GAF (SSx), 2010 U.S. Dist. LEXIS 130517, 2010 WL 4916578, at *2 (C.D. Cal. Nov. 22, 2010).

Despite what appears to be a clear legal standard, Sato nonetheless asserts that Wachovia violated California's non-judicial foreclosure statutes as a reason for removal.  This is not a defense based in federal law.  But even if it was, it does not appear on the face of Wachovia's complaint or otherwise confer federal jurisdiction.  <u>See</u> <u>Taylor</u>, 481 U.S. at 63 (holding jurisdiction must appear on the face of the complaint); <u>see also</u> <u>Hunter</u>, 582 F.3d at 1042-43 (holding jurisdiction cannot rest on actual or anticipated defense).

Moreover, Sato's argument that this court should exercise supplemental jurisdiction is unavailing.  "The supplemental-jurisdiction statute is not a source of original subject-matter jurisdiction, and a removal petition therefore may not base subject-matter jurisdiction on the supplemental jurisdiction statute, even if the action which a defendant seeks to remove is related to another action over which the federal district court already has subject-matter jurisdiction."  <u>Pacific Bell v. Covad Communications Co.</u>, No. C 99-1491 SI, 1999 U.S. Dist. LEXIS 8846, at *9 (N.D.

Case No. 5:11-cv-00810 EJD (PSG)
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE; GRANTING DEFENDANT'S MOTION TO REMAND; DENYING AS MOOT PLAINTIFF'S ADMINISTRATIVE MOTION TO AMEND COMPLAINT (EJDLC1)

**United States District Court**
For the Northern District of California

1    Cal. June 8, 1999) (quoting <u>Ahearn v. Charter Twp. Of Bloomfield</u>, 100 F.3d 451, 456 (6th Cir.

2    1996)).  Thus, any relationship between the unlawful detainer action and the wrongful foreclosure

3    case is irrelevant for purposes of removal.  There is no basis for either federal question or

4    supplemental jurisdiction here.

5              **2.        Diversity Jurisdiction**

6              Sato also alleges jurisdiction since Wachovia is a citizen of South Dakota while she is a

7    citizen of California.  Federal courts have original jurisdiction where (1) opposing parties are

8    citizens of different states and (2) the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).

9    Where diversity is cited as a basis for jurisdiction, removal is not permitted if a defendant in the case

10   is a citizen of the state in which the plaintiff originally brought the action, even if the opposing

11   parties are diverse. See 28 U.S.C. § 1441(b).  Much like federal question jurisdiction, diversity

12   jurisdiction simply does not exist here.  First, Sato fails to allege the amount in controversy exceeds

13   $75,000 in the Notice of Removal.  Second, removal is improper because this case was originally

14   filed in a California state court.  Sato is a citizen of California.  Docket Item No. 14 at 5.  Thus, even

15   assuming the parties are diverse, 28 U.S.C. § 1441(b) prohibits removal by Sato.

16             Because the court lacks a basis for jurisdiction, the unlawful detainer action will be

17   remanded to Monterey County Superior Court.

18        **B.        Request for Attorney's Fees**

19             Wachovia requests an award of fees in connection with this motion to remand.  "An order

20   remanding the case may require payment of just costs and any actual expenses, including attorney

21   fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  Since "[t]he process of removing a

22   case to federal court and then having it remanded back to state court delays resolution of the case,

23   imposes additional costs on both parties, and wastes judicial resources," requiring the payment of

24   fees and costs is appropriate where "the removing party lacked an objectively reasonable basis for

25   seeking removal."  <u>Martin v. Franklin Captial Corp.</u>, 546 U.S. 132, 140-41 (2005).  In <u>Martin</u>, the

18

26

27

28

1   Court explained that "district courts retain discretion to consider whether unusual circumstances

2   warrant a departure from the rule in a given case." Id. at 141.  In addition, the Ninth Circuit clarified

3   in Lussier v. Dollar Tree Stores, Inc., 518 F. 3d 1062, 1065 (9th Cir. 2008) that "removal is not

4   objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's

5   fees would always be awarded whenever remand is granted."  Instead, the objective reasonableness

6   of a removal depends on the clarity of the applicable law and whether such law "clearly foreclosed"

7   the arguments in support of removal. Id. at 1066-67.

8         Here, Wachovia contends Sato lacked an objectively reasonable basis for removal because

9   there are clearly settled reasons why removal is not appropriate.  The court agrees.  As determined

10  above, there is no basis for jurisdiction disclosed on the face of the complaint, and Sato makes no

11  effort to support her statement contained in the Notice of Removal that this unlawful detainer action

12  somehow arises under federal law.  Furthermore, Sato's reliance on diversity as a basis for

13  jurisdiction is unreasonable considering the two doctrines which prevent removal based on diversity

14  are codified and not subject to debate under the facts of this case.  This leaves Sato's claim that the

15  court should exercise supplemental jurisdiction.  But as already stated, supplemental jurisdiction

16  alone cannot form the basis of subject matter jurisdiction, even if another related action is already

17  pending in federal court. Pacific Bell, 1999 U.S. Dist. LEXIS 8846 at *9; Flower v. Wachovia

18  Mortg., FSB, No. C 09-343 JF (HRL), 2009 U.S. Dist. LEXIS 36299, at *26-27 (N.D. Cal. Apr. 10,

19  2009).  In short, all of Sato's arguments are "clearly foreclosed" by the by the applicable law, and

20  there are no unusual circumstances which would justify a different conclusion especially since Sato

21  is represented by counsel.  Since the court cannot find a valid reason for removal, it appears the this

22  case was removed solely to delay the imposition of a state court judgment displacing Sato from the

23  home, and to force Wachovia to sustain additional costs.  The court will not countenance such

24  frivolous behavior, especially when the precise purpose of § 1447(c) is to prevent such tactics.  An

25  award of fees and costs is therefore appropriate here.

26                                               19

United States District Court

For the Northern District of California

1    Wachovia seeks a total of $2,145.00 in fees and costs, which amounts to 7.8 hours of time at

2  a rate of $275.00 per hour.  See Decl of Yaw-Jiun (Gene) Wu at ¶ 4.  Pursuant to § 1447(c), the

3  Court awards fees only for the time spent on the motion to remand as those fees were incurred

4  directly as a result of the removal.  See Baddie v. Berkeley Farms, 64 F.3d 487, 490 (9th Cir. 1995).

5  For that reason, the court will not award fees for counsel's communications with either his client or

6  Wells Fargo's other counsel, for analyzing the due date for the motion, or for speaking with the

7  court clerk.  Thus, the court finds reasonable a total of 6.8 hours at counsel's hourly rate.

8  Accordingly, Wachovia's request for fees and costs is granted in the amount of $1,870.00.

9                                      **IV.   ORDER**

10    Based on the foregoing:

11    1.    Wachovia's Motion to Dismiss (Docket Item No. 11) is GRANTED WITHOUT

12  LEAVE TO AMEND as to counts 1, 2, 7 and 8.  The Motion is GRANTED WITH LEAVE TO

13  AMEND as to counts 3, 4, 5, and 6.  Any amended complaint must be filed within 30 days of the

14  date this order is filed.

15    2.    Wachovia's Motion to Strike (Docket Item No. 12) is DENIED AS MOOT.

16    3.    Wachovia's Motion to Remand (Docket Item No. 17) is GRANTED.  Wachovia's

17  request for fees pursuant to 28 U.S.C. § 1447(c) is also GRANTED in the amount of $1,870.00.

18    4.    Given the ruling on the Motion to Dismiss, Sato's Ex Parte Motion to Amend

19  the Complaint (Docket Item No. 26) is DENIED AS MOOT.

20  IT IS SO ORDERED.

21

22  Dated:  July 13, 2011

                              _____
23                              EDWARD J. DAVILA
                              United States District Judge

24

25

26                                            20

27  Case No. 5:11-cv-00810 EJD (PSG)
    ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING AS MOOT DEFENDANT'S MOTION TO
    STRIKE; GRANTING DEFENDANT'S MOTION TO REMAND; DENYING AS MOOT PLAINTIFF'S
28  ADMINISTRATIVE MOTION TO AMEND COMPLAINT (EJDLC1)

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Robert Arthur Bailey rbailey@afrct.com
Nicole Rae Gallagher MsGallagherEsq@gmail.com
Deepika Singh Saluja deepikas@bdfgroup.com
Edward A. Treder edwardt@bdftw.com
Yaw-Jiun Wu gwu@afrct.com

**Dated: July 13, 2011**                                    **Richard W. Wieking, Clerk**

                                                   **By:      /s/ EJD Chambers                   **
                                                         **Elizabeth Garcia**
                                                         **Courtroom Deputy**

United States District Court
For the Northern District of California

21

Case No. 5:11-cv-00810 EJD (PSG)
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING AS MOOT DEFENDANT'S MOTION TO
STRIKE; GRANTING DEFENDANT'S MOTION TO REMAND; DENYING AS MOOT PLAINTIFF'S
ADMINISTRATIVE MOTION TO AMEND COMPLAINT (EJDLC1)