IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BONNIE C. SATO,<br><br>　　　　Plaintiff(s),<br>　v.<br>WACHOVIA MORTGAGE, FSB, et. al.,<br><br>　　　　Defendant(s)._____/ | CASE NO. 5:11-cv-00810 EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE; GRANTING DEFENDANT'S MOTION TO EXPUNGE LIS PENDENS**<br><br>[Docket Item No(s). 41, 42, 44, 66] |

Plaintiff Bonnie C. Sato ("Sato") brings the instant action against Defendants Wachovia Mortgage, FSB ("Wachovia"),[1] Wells Fargo Bank, and NDEX West LLC[2] for irregularities in the foreclosure process related to real property located in Carmel, California. On July 13, 2011, the court dismissed all of Sato's claims, some with leave to amend but most without. See Order, Docket Item No. 36. Sato filed a First Amended Complaint ("FAC") on August 10, 2011. See Docket Item

---

[1] Sato obtained the subject home loan from Wachovia Mortgage, FSB, in 2008. See FAC, at ¶ 22; see also Wachovia's Req. for Judicial Notice ("RJN"), Docket Item No. 43, at Ex. A. At that time, Wachovia was an independent "Federal savings bank chartered under section 5 of the Home Owners' Loan Act" and "subject to all lawful and applicable rules, regulations, and orders of the Office of Thrift Supervision." See RJN, Ex. B. Although Wachovia was subsequently acquired by a national banking association, namely Wells Fargo Bank, N.A., district courts, including this court, have held that HOLA preemption applies to all conduct relating to the loan. DeLeon v. Wells Fargo Bank, N.A., 729 F. Supp. 2d 1119, 1126 (N.D. Cal. 2010). With the exception of exhibits G and H, Wachovia's RJN is GRANTED. See Fed. R. Evid. 201(b).

[2] NDEX West LLC's motion for joinder in Wachovia's Motion to Dismiss (Docket Item No. 44) is GRANTED.

1  No. 40. That pleading is the subject of the motions presently before the court.

2  Wachovia again moves to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6). See Docket Item No. 41. It also moves to strike portions of the FAC under Federal Rule of Civil Procedure 12(f), and to expunge a lis pendens recorded against the subject property. See Docket Item Nos. 44, 66. The factual background relevant to these three motions is contained in the court's prior order.

Federal jurisdiction arises pursuant to 28 U.S.C. §§ 1331 and 1332. For the reasons explained below, the Motion to Dismiss and the Motion to Expunge Lis Pendens will be granted. The Motion to Strike will be denied as moot.

## II. LEGAL STANDARDS

### A. Dismissal under Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 556-57.

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). The court must generally accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice.

See Lee v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001). "[Material which is properly submitted as part of the complaint may be considered." Twombly, 550 U.S. at 555. But "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Id.

### B. Preemption under HOLA

As with the last motion, relevant to the instant matter are the principles underlying HOLA preemption. Federal preemption of state laws stems from the Supremacy Clause of the Constitution. United States v. Arizona, 641 F. 3d 339, 344 (9th Cir. 2011). "[T]he laws of the United States...shall be the supreme law of the land...any Thing in the Constitution or laws of any state to the contrary notwithstanding." U.S. Const. art. VI, cl. 2.

Generally, "[p]reemption analysis 'start[s] with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" City of Columbus v. Ours Garage & Wrecking Service, Inc., 536 U.S. 424, 438 (2002) (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)). Congressional intent is therefore the "ultimate touchstone" of preemption inquiry. Medtronic, 518 U.S. at 485. Such intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 152-53 (1982). State law may also be preempted by federal regulations. Id. at 153. "Where Congress has directed an administrator to exercise his discretion, his judgments are subject to judicial review only to determine whether he has exceeded his statutory authority or acted arbitrarily." Id. If these conditions are met, "the statutorily authorized regulations of an agency will pre-empt any state or local law that conflicts with such regulations or frustrates the purposes thereof." New York v. Fed. Commc'ns Comm'n, 486 U.S. 57, 64 (1988).

There are times when the traditional presumption against preemption does not apply. Indeed, the presumption is "not triggered when the State regulates in an area where there has been a history of significant federal presence." United States v. Locke, 529 U.S. 89, 108 (2000). As relevant here, "Congress has legislated in the field of banking from the days of McCulloch v. Maryland, 17 U.S. 316, 325-26, 426-27, 4 L. Ed. 579 (1819), creating an extensive federal statutory and regulatory

3
CASE NO. 5:11-cv-00810 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE; GRANTING DEFENDANT'S MOTION TO EXPUNGE LIS PENDENS

scheme." Bank of Am. v. City & County of San Francisco, 309 F.3d 551, 558 (9th Cir. 2002). HOLA was enacted "to charter savings associations under federal law, at a time when record numbers of home loans were in default and a staggering number of state-chartered savings associations were insolvent." Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1004 (9th Cir. 2008). One of HOLA's central purposes was to restore public confidence in the banking system by consolidating the regulation of savings and loan associations with the federal government. Id. To achieve this purpose, Congress authorized the Office of Thrift Supervision ("OTS") to promulgate regulations governing federal savings associations. 12 U.S.C. § 1464; Silvas, 514 F.3d at 1005. OTS occupies the entire field in that regard. 12 C.F.R. § 560.2(a).

HOLA's implementing regulations set forth a list, "without limitation," of the categories of state laws that are expressly preempted:

> The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
> ....
> Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;
> ....
> Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages....

12 C.F.R. § 560.2(b)(4), (b)(9)-(10) (2011).

Although HOLA and its related regulations have been described as "so pervasive as to leave no room for state regulatory control," state laws may nonetheless survive a preemption claim in limited circumstances. Conference of Fed. Sav. & Loan Ass'ns v. Stein, 604 F.2d 1256, 1260 (9th Cir. 1979), aff'd, 445 U.S. 921. Those state laws which "only *incidentally affect* the lending operations of Federal savings associations" or "are otherwise consistent with the purposes of the regulations may not be preempted." 12 C.F.R. § 560.2(c) (emphasis added). In order to determine whether a particular state law has such an effect, the Ninth Circuit has provided the following process:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

Silvas, 514 F.3d at 1005 (quoting OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sep. 30, 1996)).

### III.   DISCUSSION

#### A.   The Amended Claims

Sato was given leave to amend claims for violation of California Business and Professions Code § 17200, intentional and negligent misrepresentation, and promissory estoppel. They now appear as five separate claims in the FAC. Each is addressed in turn.

##### 1.   Claim 6: Promissory Estoppel

Since it was at the time unclear whether the claim for promissory estoppel was preempted by HOLA, the court previously allowed Sato leave to amend to clarify the basis for the claim. On second review, the court has determined the promissory estoppel claim is preempted.

Although Sato attempts to plead in general terms, she unequivocally seeks to enforce Wachovia's alleged promise to offer her a loan modification if she defaulted on her loan payments while at the same time postponing further foreclosure efforts. See FAC, at ¶¶ 97-100. In that regard, this claim is directly preempted by the "terms of credit" section of 12 C.F.R. § 560.2(b) because enforcement of the promise would impose an affirmative duty on Wachovia to provide a loan modification and postpone a foreclosure sale while doing so. The manner in which Sato seeks to apply promissory estoppel would also have more than an incidental effect on lending.

In addition, this claim is moot. "The purpose of [promissory estoppel] is to make a promise binding, under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange." Youngman v. Nevada Irrigation Dist., 70 Cal. 2d 240, 249 (1969). This promise can no longer be made binding on Wachovia because the trustee's sale has

already occurred.  See RJN, at Ex. I.

For these reasons, the claim for promissory estoppel will now be dismissed without leave to amend since allowing for a third amendment in the face of both federal preemption and mootness would be futile.

### 2. Claims 9, 10 & 11: Violations of California Business & Professions Code § 17200

Sato now brings three claims under the Unfair Competition Law ("UCL"), entitled disgorgement, fraud and intentional misrepresentation and concealment.  None are adequately plead.

Looking first at disgorgement, this claim is based on an allegation that Wachovia "perfect[ed] foreclosure on residential properties without any legal authority to do so."  See FAC, at ¶ 113.  But the court already dismissed all of Sato's claims based on California's foreclosure statutes without leave to amend.  See Order, Docket Item No. 36, at 9-10.  This dismissal included the earlier version of the UCL claim to the extent it relied on statutory violations.  See id., at 11-12.  Since the disgorgement claim must be "borrowing" violations of those same foreclosure statutes to establish liability, it is similarly preempted by HOLA.  Moreover, the allegation of inability to foreclose is contradicted by judicially noticeable documents.  See RJN, at Exs. D, E, F, I.

The other two claims are again subject to dismissal, but for a different reason.  Although Defendants argue otherwise, preemption is not a bar to these claims because Sato appears to rely on a general duty to refrain from fraud and misrepresentation in business dealings.  The court determined as much in the last order.  See Order, Docket Item No. 36, at 12:22-23 ("[I]f the court infers that the allegations only invoke a general duty to not engage in fraud during business dealings, then the claim only incidentally affects lending and is not preempted.").  But Sato still has not met the applicable pleading standard on this second attempt to provide additional facts.  "A plaintiff alleging unfair business practices under [the UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation."  Khoury v. Maly's of California, Inc., 14 Cal. App. 4th 612, 619 (1993); see also Kearns v. Ford Motor Co., 567 F.3d 1120, 1124-25 (9th Cir.

2009). General, vague and conclusory allegations which lack the "who, what, when, where, and how" are required by Federal Rule of Civil Procedure Rule 9(b). Kearns, 567 F.3d at 1125. "A party alleging fraud must 'set forth more than the neutral facts necessary to identify the transaction.'" Id. at 1124 (quoting In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994), superseded by statute on other grounds, Private Sec. Litig. Reform Act of 1995, Pub. L. 104-67, 109 Stat. 737). The allegations only establish that unknown representatives of Wachovia stated to Sato at unspecified times that Sato should stop making her loan payments to qualify for a loan modification, and that these or other unknown representatives also promised to refrain from foreclosure attempts. See FAC, at ¶¶ 26-32. Other than adding one allegation, the FAC offers little more than the original dismissed complaint.

The UCL claims will be dismissed without leave to amend since allowing for a third amendment would be futile.

### 3.     Claim 12: Negligence

Since Sato alleges that Wachovia knew it "owed a general duty to [Sato] not to make material misrepresentations," the claim entitled negligence is actually a reformation of the original claim for negligent misrepresentation. See id., at ¶ 138. The court previously dismissed the claim for negligent misrepresentation for failure to plead with particularity under Rule 9. See Order, Docket Item No. 36, at 14.

This claim is still deficient. Like the UCL claim, Sato has not provided the detail required to maintain this fraud-based claim. It will also be dismissed, this time without leave to amend because allowing for a third amendment would be futile.

### B.     The New Claims Must be Dismissed

Each of the new claims is subject to dismissal because Sato inserted these claims without an appropriate stipulation or leave of court. The court did not allow Sato to include any new claims in the prior dismissal order, and Federal Rule of Civil Procedure 15 prohibited her from doing so on her own volition. Under Rule 15(a)(1), a party "may amend its pleading once as a matter of course" within 21 days after that pleading is served, or 21 days after service of a responsive pleading or

motion under Rule 12.  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).

Here, Wachovia filed its first motion to dismiss the original complaint on March 1, 2011, and Sato's ability to amend as a matter of course expired 21 days later pursuant to Rule 15(a)(1)(B).  Amending the complaint to add eight new claims in August, 2011, without the stipulation of defendants or leave of court was in contravention of Rule 15.  They must be dismissed on that ground alone.

But the determination under Rule 15 notwithstanding, the court addresses each of the new claims because they would be subject to dismissal even if Sato had taken appropriate steps to add them to the FAC.

### 1. Claim 1: Violation of Truth in Lending Act ("TILA")

To begin, the claim for violation of TILA is barred by the statute of limitations considering the Deed of Trust is dated January 10, 2008.  15 U.S.C. § 1635(f) (one-year state of limitations from date loan documents are signed for damages claims under TILA); 15 U.S.C. § 1640(e) (three-year statute of limitations from date loan documents are signed for rescission under TILA); see also Meyer v. Ameriquest Mortg. Co., 342 F.3d 899, 902 (9th Cir. 2003).  The claim for rescission is also moot by virtue of the Trustee's Sale.  15 U.S.C. § 1635(f) ("An obligor's right of rescission shall expire . . . upon the sale of the property. . . .");  see also RJN, at Ex. I.  It is also insufficiently plead.  See Iqbal, 129 S. Ct. at 1949 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancements.'");  see also Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984) ("The plaintiff must 'allege with at least some degree of particularity overt acts which defendants engaged in' that support the plaintiff's claim.").

### 2. Claim 2: Violation of the Fair Debt Collections Practices Act "(FDCPA")

The FAC is devoid of facts supporting liability under the FDCPA.  In order to state a claim under the FDCPA, a plaintiff must allege facts that establish the following: (1) plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant qualifies as a "debt

8
CASE NO. 5:11-cv-00810 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING AS MOOT DEFENDANT'S MOTION
TO STRIKE; GRANTING DEFENDANT'S MOTION TO EXPUNGE LIS PENDENS

collector" under the FDCPA; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA. See, e.g., Frazier v. Absolute Collection Serv., Inc., 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011); McCorriston v. L.W.T., Inc., 536 F. Supp. 2d 1268, 1278 (M.D. Fla. 2008); Fenn v. CIR, Law Offices, No. 1:10-CV-01903-OWW-SMS, 2011 U.S. Dist. LEXIS 23141, at *5, 2011 WL 850131 (E.D. Cal. Mar. 8, 2011). The defendants in this case, which consist of Sato's lender, its successors, and the named trustee, are not "debt collectors" as that term is defined by the statute. See 15 U.S.C. § 1692a(6) (A "debt collector" under the FDCPA is either (1) "a person" the "principal purpose" of whose business is the collection of debts; or (2) "a person" who "regularly" collects debts on behalf of others.); see also Rispoli v. Bank of America, No. C11-362RAJ, 2011 U.S. Dist. LEXIS 85053, at *7, 2011 WL 3204725 (W.D. Wash. July 1, 2011) ("[A]s a matter of law a 'debt collector' under the FDCPA cannot be a consumer's creditor.").

In any event, foreclosure activity does not constitute "debt collection." Diessner v. Mortg. Elec. Registration Sys., Inc., 618 F. Supp. 2d 1184, 1189 (D. Ariz. 2009); see also, e.g., Garcia v. American Home Mortg. Serv., Inc., No. 11-CV-03678-LHK, 2011 U.S. Dist. LEXIS 142039, at *13-17, 2011 WL 6141047 (N.D. Cal. Dec. 9, 2011) ("non-judicial foreclosure does not constitute 'debt collection' as defined by the [FDCPA]"); Garfinkle v. JPMorgan Chase Bank, No. C 11-01636 CW, 2011 U.S. Dist. LEXIS 81054, at *7-10, 2011 WL 3157157 (N.D. Cal. July 26, 2011); Geist v. OneWest Bank, No. C 10-1879 SI, 2010 U.S. Dist. LEXIS 113985, at *5-8, 2010 WL 4117504 (N.D. Cal. Oct. 19, 2010); Aniel v. T.D. Serv. Co., No. C 10-03185 JSW, 2010 U.S. Dist. LEXIS 92018, at *2-4, 2010 WL 3154087 (N.D. Cal. Aug. 9, 2010); Landayan v. Washington Mut. Bank, No. C-09-00916 RMW, 2009 U.S. Dist. LEXIS 93308, at *6-7, 2009 WL 3047238 (N.D. Cal. Sept. 18, 2009).

### 3. Claim 3: Violation of Real Estate Settlement Procedures Act ("RESPA")

Like the TILA claim, the claim for violation of RESPA is untimely since it appears to be based on conduct occurring during the 2008 loan process. See 12 U.S.C. § 2614 (one-year statute of limitations for claims based on violation of 12 U.S.C. §§ 2607 and 2608; three-year statute of limitations for claims based on violation of 12 U.S.C. §§ 2605). Furthermore, the minimal amount

of facts in the FAC relevant to this claim do not support the particular RESPA violations alleged because Sato, for the most part, merely recited portions of the statutory scheme. See Iqbal, 129 S. Ct. at 1949; see also Jones, 733 F.2d at 649.

### 4. Claim 4: Violation of California Civil Code § 3412

The claim for cancellation of written instrument under California Civil Code § 3412 is based entirely on purported and unspecified violations of California's non-judicial foreclosure statutes, Civil Code § 2924 et. seq. See FAC, at ¶ 90. Notwithstanding the lack of factual allegations to support it, the claim cannot survive in light of order dismissing without leave to amend claims based on the foreclosure statutes. Moreover, this claim is preempted by HOLA as plead. See Silvas, 514 F.3d at 1006 (holding that a law of general applicability is preempted if, as applied, it is a statute contemplated by 12 C.F.R. § 560.2(b)); see also Robertson v. Super. Ct., 90 Cal. App. 4th 1319, 1325 (2001) ([Civil Code § 3412] is . . . just maxims of law generally applicable to civil and commercial transactions and relationships."); see also DeLeon, 729 F. Supp. 2d at 1126.

### 5. Claim 5: Unjust Enrichment

The claim for unjust enrichment alleges that as a direct result of "marketing sub-prime loans via inflated notary charges and other fees, charging [Sato] and countless other borrowers inflated notary charges and other fees, and through the unlawful foreclosure of [Sato's] property as well as hundreds of thousands of similarly situated homeowners," Defendants have been unjustly enriched. See FAC, at ¶ 94. This claim falls squarely within the "terms of credit," "loan-related fees," and "processing," "origination" and "servicing" provisions of 12 C.F.R. § 560.2(b). It is therefore preempted.

### 6. Claim 7: Accounting

Sato seeks an accounting of (1) the amount received by Defendants as a result of the Trustee's Sale, a portion of which Sato alleges she is entitled to receive, and (2) an accounting of the details of an alleged loan modification. But "[a] cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting." Teselle v.

McLoughlin, 173 Cal. App. 4th 156, 179 (2009). "An accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation." Id. Here, the exact amount due to Sato, if any, from the Trustee's Sale is capable of determination by calculation without the need for an accounting. The request relating to the loan modification is not a request for an accounting of some amount owed to Sato; it is just a request for the disclosure of information. In addition, Sato does not clarify from which of Defendants she seeks an accounting. These defects are fatal to this claim.

### 7. Claim 8: Violation of the Consumer Legal Remedies Act ("CLRA")

The CLRA makes unlawful "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). "Goods" are defined for purposes of the CLRA as "tangible chattels bought or leased for use primarily for personal, family, or household purposes." Cal. Civ. Code § 1761(a). "Services" are defined as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." Cal. Civ. Code § 1761(b).

The allegations contained in the FAC do not support a CLRA claim, considering Sato provides only the most general of facts: "Defendants' actions and conduct . . . have resulted in services provided to consumers." See FAC, at ¶ 107. "[L]oans are intangible goods and . . . ancillary services provided in the sale of intangible goods do not bring these goods within the coverage of the CLRA." Consumer Solutions Reo, LLC v. Hillery, 658 F. Supp. 2d 1002, 1016-17 (N.D. Cal. 2009). The allegations relating to unspecified "services" are insufficient.

### 8. Claim 13: Declaratory Relief

A review of the claim for declaratory relief reveals it is not an actual cause of action but rather an aspect of the relief sought by Sato in this case. See Loder v. World Savings Bank, N.A., No. C11-00053 THE, 2011 U.S. Dist. LEXIS 53166, at *21-22, 2011 WL 1884733 (N.D. Cal. May 18, 2011) (citing Shell Oil Co. v. Richter, 52 Cal. App. 2d 164, 168, 125 P.2d 930 (1942)). It is also preempted by the "terms of credit" section of 12 C.F.R. § 560.2(b), considering Sato requests "a

judicial determination . . . as to whether [Sato] qualifies for a loan modification under the Class Action Settlement, HAMP, or any and all other government or bank programs currently available." See Ortiz v. Wells Fargo Bank, N.A., No. C 10-4812 RS, 2011 U.S. Dist. LEXIS 58243, at *14-15, 2011 WL 4952979 (N.D. Cal. May 27, 2011).

### 9.     Claim 14: Enforcement of Settlement

Sato seeks to enforce a class action settlement reached in separate litigation against the Defendants in this case. That case is also pending in this district. See In re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation, Case No. 5:09-cv-02015 JF (the "Pick-a-Payment Litigation").

Assuming this type of claim actually exists as a stand-alone cause of action, it is nonetheless misplaced here. First, Sato does not allege to exist nor has she produced an actual judgment or settlement agreement requiring Wachovia to either offer her a loan modification or postpone the now-completed foreclosure. The authority upon which she relies would apply, if at all, only if such a pleading exists. See Fed. R. Civ. P. 70 (allowing for the enforcement of *judgments*); see also Cal. Code Civ. Proc. § 664.6 ("If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement."). A general allegation of settlement does not suffice.

Second, the notice sent to potential class members in the Pick-a-Payment Litigation, which Sato did attach to the FAC, specifically advises that individuals may not sue "about the legal issues" raised in the Pick-a-Payment Litigation absent an exclusion from the class. See FAC, at Ex. 2. Sato therefore cannot have it both ways by accepting the class action settlement in the Pick-a-Payment Litigation while also maintaining this case, or opting out of the class action and then using its settlement agreement as way to resolve the instant claims. See id. In the end, she may only choose one option.

### C.     Conclusion

The court has concluded, as was indicated throughout this order, that Sato will not be given

leave to amend for a second time those claims that were included in the original complaint. In addition, the new claims cannot be maintained in the FAC. These decisions effectively operate as a final resolution of this case and judgment will be entered in favor of Defendants. The companion Motion to Strike will be denied as moot. The Motion to Expunge Lis Pendens will be granted. See Cal. Code. Civ. Proc. § 405.32. The request for attorney's fees will be denied as the court finds Sato acted with substantial justification in recording the lis pendens considering the pendency of this action and the claims asserted herein. See Cal. Code Civ. Proc. § 405.38. As demonstrated by the two lengthy orders authored by this court, the issues presented by this action were complex and not meritless on their face.

### III. ORDER

Based on the foregoing:

1. Defendants' Motion to Dismiss is GRANTED. Claims 6, 9, 10, 11, and 12 of the FAC are DISMISSED WITHOUT LEAVE TO AMEND. The remaining claims are DISMISSED for failure to comply with Federal Rule of Civil Procedure 15;

2. Defendants' Motion to Strike is DENIED AS MOOT;

3. Defendants' Motion to Expunge Lis Pendens is GRANTED, and the lis pendens recorded with the Monterey County Recorder's Office as Document No. 2011003284 against real property commonly known as 25500 Via Marquita, Carmel, California 93923 (APN: 169-341-006) is hereby EXPUNGED. Wachovia's request for attorney's fees is DENIED.

**IT IS SO ORDERED.**

Dated: March 31, 2012

EDWARD J. DAVILA
United States District Judge

CASE NO. 5:11-cv-00810 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE; GRANTING DEFENDANT'S MOTION TO EXPUNGE LIS PENDENS